GENERAL ELECTRIC COMPANY, A NEW YORK CORPORATION v. LOCAL 182 INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, CHARLES BUFF AND EARL WHITE

No. 7925SC1064

(Filed 3 June 1980)

1. **Master and Servant § 17.1– enjoining union's mass picketing and other strike activities – jurisdiction of State courts**
     The courts of this State had jurisdiction of an action to enjoin defendant union from mass picketing at plaintiff's plant and to prohibit the union from interfering with ingress and egress at the plant, assaulting or intimidating workers, blocking public or private roads, damaging motor vehicles entering

or leaving plaintiff's plant and resisting law enforcement officers in the lawful discharge of their duties.

2. **Master and Servant § 17— permanent injunction against union two years after strike ended**

The trial court erred in entering a permanent injunction prohibiting defendant union from mass picketing at plaintiff's plant, limiting the number of pickets to six, and prohibiting the union from interfering with ingress and egress at the plant, assaulting or intimidating workers, blocking roads and interfering with police officers in the lawful discharge of their duties where the permanent injunction was entered almost two years after the settlement of the strike which gave rise to the action for an injunction and the controversy resulting in the court's prior temporary restraining order had ceased to exist.

APPEAL by defendants from *Griffin, Judge.* Judgment entered 29 June 1979 in Superior Court, CATAWBA County. Heard in the Court of Appeals 24 April 1980.

This appeal arises from the granting of a permanent injunction sought by plaintiff which enjoins defendants from engaging in certain activities. Plaintiff operates a plant in Hickory, North Carolina, where some of its employees are members of the defendant union. The plant is located approximately 1425 feet down an access road off Fairgrove Church Road. Approximately one quarter mile to the north on Fairgrove Church Road is the Catawba Memorial Hospital. To the south, the road goes to major U.S. highways (U.S. 64 and U.S. 70) and crosses an interstate (I 40), to which it has access.

On 24 October 1977, at approximately 10:00 p.m., a strike was called by the defendant union against plaintiff because of a grievance over welding job classifications. Plaintiff was given notice of the strike pursuant to the collective bargaining agreement between the parties. A picket line was set up outside the plant at the intersection of Fairgrove Church Road and the plant's access road. Up to seventy-nine pickets marched in an elliptical formation, creating a double line at the entrance of the access road into Fairgrove Church Road. An equal number of people were crossing back and forth to the picket line from the other side of Fairgrove Church Road. A state road crew was also working in the intersection.

General Electric Co. v. Union

At rush hour on the morning of the strike, the area was clogged by considerable traffic congestion. Access to plaintiff's plant was effectively impeded and employees of the nearby hospital were late for work that morning. This was also the same route emergency vehicles would use. The picketers, as well as impeding the flow of traffic, engaged in other illegal and violent acts. They were reported to have damaged vehicles entering the plant, thrown rocks and threatened nonunion employees.

On 25 October, plaintiff filed a complaint in Superior Court against the union, its president and its vice president. A temporary restraining order was obtained at 2:55 p.m. that day from Judge William T. Grist which prevented defendants from mass picketing and limited the number of pickets to six or fewer. They were not to picket in the road. The temporary restraining order prohibited the union from interfering with ingress and egress at the plant, assaulting or intimidating workers, blocking public or private roads, damaging motor vehicles entering or leaving plaintiff's plant and resisting law enforcement officers in the lawful discharge of their duties. A hearing was held before Superior Court Judge George M. Fountain on 3 November 1977, at which time the temporary restraining order was continued in effect as a preliminary injunction. The strike ended on 28 October.

The union, its president and its vice president filed motions for summary judgment which were denied on 10 August 1978 by Superior Court Judge Sam J. Ervin III, except as to defendant Charles Buff who was no longer an officer of the union. Superior Court Judge Kenneth A. Griffin tried the case on its merits and, after hearing evidence from both sides, found for plaintiff. The preliminary injunction was continued as a permanent injunction by order of the trial court on 29 June 1979. The defendants and others acting in concert with them were permanently restrained and enjoined in the following manner:

1. From preventing or attempting to prevent by mass picketing, violence, intimidation or coercion any person or

persons from freely and peacefully entering or leaving the GE plant.

2. In the event defendants wish to picket the GE plant they shall use not more than six walking pickets at any one time; pickets may walk only on the shoulders of that portion of the GE access road from its intersection with Fairgrove Church Road to the fence at the plant entrance and on the outside of the guard rails of the access road. Replacement pickets shall not be replaced at intervals of less than two hours except in an emergency situation. One person but no more may be stationed at or near the plant gate for the purpose of observing and maintaining a front picket line or giving information or other assistance to pickets.

3. Persons working, seeking to work, doing business with or seeking to do business with GE at this plant shall not be assaulted or intimidated in any way.

4. Vehicles seeking to enter or leave the GE plant by means of the access road into Fairgrove Church Road shall not be blocked or impeded in any manner and shall not be damaged in any way.

5. There shall be no resistance or other interference with state or county law enforcement officers in the lawful discharge of their duties in maintaining peace and order in the event of another strike.

6. Defendants shall not aid, procure or cause to be done any act which they are hereby restrained or enjoined from doing themselves.

Defendants appealed the granting of this permanent injunction.

*Weinstein, Sturges, Odom, Bigger, Jonas and Campbell, by William W. Sturges and Hugh B. Campbell, Jr., for plaintiff appellee.*

*Judith E. Kincaid, for defendant appellants.*

General Electric Co. v. Union

VAUGHN, Judge.

[1]  At the outset, this Court is faced with the question of whether our State courts have jurisdiction over the subject matter of this action or whether jurisdiction is preempted by the National Labor Relations Act of 1935, 29 USC § 151 *et seq.*, and vested in the National Labor Relations Board. The federal labor relations statutes do not deprive a state of the power to enjoin mass picketing or picketing involving violence, notwithstanding that interstate commerce is affected by the picketing. *Youngdahl v. Rainfair*, 355 U.S. 131, 2 L. Ed. 2d 151, 78 S. Ct. 206 (1957);  *United A.A. & A.I.W. v. Wisconsin Employment Relations Board*, 351 U.S. 266, 100 L. Ed. 1162, 76 S. Ct. 794 (1956); *Allen-Bradley Local v. Wisconsin Employment Relations Board*, 315 U.S. 740, 86 L. Ed. 1154, 62 S. Ct. 820 (1942). The State is not preempted by the National Labor Relations Act from exercising its historic powers of maintaining peace and order within its jurisdiction and protecting its citizens in the free, rightful and safe use of the public roads and highways. The courts of a state cannot regulate orderly and peaceful picketing. But, where picketing results in heavy traffic congestion, damage to property and threats of physical violence as occurred in this case, the State courts have the power to enforce the laws of this State which protect the public welfare and to enjoin acts of violence and civil disobedience.

> [O]rderly and peaceful picketing to obtain a lawful result is but the exercise of constitutional rights and cannot be prohibited; but when picketing, for a lawful purpose, is such as to disturb the public peace, it can and has repeatedly been enjoined or otherwise punished. But the power of a court of equity to enjoin is not exhausted merely because violence is not present . . . . "Wrongful acts which may also be criminal, but which threaten injury to private property rights may invoke the aid of equity to prevent irreparable loss."

*Aircraft Co. v. Union*, 247 N.C. 620, 626, 101 S.E. 2d 800, 805 (1958) (citations omitted). The trial court and consequently this Court has jurisdiction in this case of threatened and actual violence where the picketing could not be characterized as peaceful. The clause in the temporary restraining order and preliminary injunction which limited the number of pickets,

restricted their placement and provided the method for their replacement was a valid order for the protection of the public safety of the working employees and those citizens traveling upon the public highways. The other enjoined acts were criminal acts and were appropriate matters of state jurisdiction and not the National Labor Relations Board.

[2] We now turn to whether it was appropriate for the trial court to enter a permanent injunction in this case. We hold this was not an appropriate circumstance for the issuance of a permanent injunction.

In reversing the entry of a permanent injunction, our Supreme Court has said, "[t]he injunction is an extraordinary remedy and will not be granted except in cases where adequate relief cannot be had without it." *Smith v. Rockingham,* 268 N.C. 697, 699-700, 151 S.E. 2d 568, 570 (1966). Where permanent injunction is the sole relief sought and the evidence at the final hearing fails to make out a cause of action, the action should be dismissed. *Greene Co. v. Kelley,* 261 N.C. 166, 134 S.E. 2d 166 (1964).

In this case, a cause of action for a permanent injunction was not established. The order was entered almost two years after the strike had been settled and the controversy resulting in the temporary restraining order had ceased to exist. The strike and picketing having ended, the subject matter of the lawsuit no longer existed. A trial court sitting in equity has no powers to issue an injunction when only abstract rights are involved. Plaintiff demonstrated no then existing acts by defendants justifying the permanent injunction. The record indicates there was a similar strike at plaintiff's Hickory plant in late 1969 and early 1970 for which a preliminary injunction was obtained. We also note that the strike in question began on 24 October at about 10:00 p.m. and by 2:55 p.m. the very next day, plaintiffs had a temporary restraining order. Strikes against plaintiff by defendant appear from the record to be frequent but not every strike is accompanied by picketing. The plant experiences a one percent turnover in its labor force every month and the union office holders frequently change. Both the individual defendants are no longer union officers. With these constant

changes, we do not discern the need for such prohibitive restrictions to be permanently placed upon defendants. Plaintiff's injunctive remedy arises only as each cause of action arises, *i.e.*, each time violent picketing or irreparable injury to persons and property appears likely or actually occurs. The circumstances will be different each time. The trial court should not have entered a permanent injunction. The action should have been dismissed.

Reversed and remanded.

Judges CLARK and MARTIN (Harry C.) concur.